113 F.3d 685
 73 Fair Empl.Prac.Cas. (BNA) 1284,
70 Empl. Prac. Dec. P 44,702
Frank DANIELS, Plaintiff-Appellant,
v.
PIPE FITTERS ASSOCIATION, LOCAL UNION 597, U.S.A., Defendant-Appellee,
and
Mechanical Contractors Association, Intervenor-Appellee.
 No. 96-2457.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1997.
Decided May 5, 1997.
 
 K. Turpin Carl, argued, Chicago, IL, for Plaintiff-Appellant.
 Steven B. Varick, McBride, Baker & Coles, Chicago, IL, Rita L. Martinez, Quaker Oats Co., Chicago, IL, Thomas M. Durkin, Charles F. Regan, argued, Mayer, Brown & Platt, Chicago, IL, for Defendant-Appellee Pipefitters Ass'n Local Union 597.
 Arthur Caesar Chapman, argued, Chapman & Roin, Chicago, IL, for Defendant-Appellee Mechanical Contractors Ass'n.
 Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Thirteen years ago, Frank Daniels began this suit under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. At trial in 1988 Daniels persuaded both the judge (who resolved the Title VII claim) and the jury (which resolved the § 1981 claim) that Local 597 of the Pipefitters Union had engaged in egregious, decades-long discrimination against its black members when referring pipefitters to jobs, in the process violating a 1974 consent decree that obliged the union to desist from discrimination. Judge McGarr, who initially handled the case, retired from the bench. In 1990 Judge Alesia entered judgment on the damages issues, directed the union to reinstate Daniels as a member, and appointed his predecessor as a special master to consider further equitable relief. 135 L.R.R.M. (BNA), 2534, 53 Fair Empl.Prac.Cas. (BNA) 1669, (N.D.Ill.1990). The next year we affirmed the award of damages and the order to reinstate Daniels. 945 F.2d 906 (7th Cir.1991). That opinion describes the union's discriminatory practices. While the special master took submissions about prospective relief, the district judge entertained the union's argument that it should receive a new trial. The court rejected this request, and again we affirmed. 983 F.2d 800 (7th Cir.1993).
 
 
 2
 During 1992 and 1993 the master brokered an agreement among Daniels, the union, and the Mechanical Contractors Association, a multi-employer group that intervened for the purpose of joining the negotiations. This pact, ultimately embodied in both a consent decree and an amendment to the collective bargaining agreement between Local 597 and the Association, converted the union's "information hall" to a traditional hiring hall with sequential assignment of jobs to members on an out-of-work list. Employers may request by name persons they employed during the prior year, who the customer wants, or who they hire as supervisors; other positions are subject to the sequential assignment system (subject to an "emergency" exception). When entering the consent decree in December 1993, Judge Alesia appointed a hiring hall monitor to supervise implementation of the system and file monthly reports with the court. The decree provided that at the end of one year "the Court may extend the Decree an additional year, modify the Decree, or terminate the Decree." Judge Alesia extended the injunction under this provision but terminated it in April 1996, after the monitor reported that the hiring hall was working smoothly and that the pattern of discrimination had at long last been overcome. The hiring hall (sans monitor) continues to operate as before, however, as a result of the collective bargaining agreement.
 
 
 3
 Daniels asks us to reinstate the injunction, but that would violate the parties' agreement. Their settlement called for creation of a hiring hall with one year's judicial supervision, plus an optional second year, following which hiring would again be subject to collective bargaining. Longer-lasting relief cannot be based on the parties' agreement; it would no longer be a consent decree. Ongoing discrimination could support extra relief whether or not the parties agreed, but after reviewing the monitor's reports the judge found no evidence of current discrimination. As Judge Alesia remarked, if Daniels believes that he has evidence of discrimination today, he is free to file a new suit. Permitting labor and management to engage in collective bargaining is an important objective of federal law, well served by returning this subject to private hands. Cf. Board of Education v. Dowell, 498 U.S. 237, 248-51, 111 S.Ct. 630, 637-39, 112 L.Ed.2d 715 (1991).
 
 
 4
 Although Judge Alesia charged the master with devising a plan of injunctive relief, the master did not stop there. During 1992 the master took evidence about the union's treatment of Daniels after the close of the evidence at trial. Local 597 stripped Daniels of membership, a step that the jury attributed to racial discrimination; lack of a union card meant that Daniels could not use the union's referral hall to obtain employment. The district court's judgment of September 13, 1990, provided among other things that "Local 597 is directed to reinstate the plaintiff immediately, retroactive to the date of his expulsion from the union." This direction meant that Daniels was to have the privileges of membership, including the right to referrals. Yet the master found that "Daniels did not work for any employer under contract with Local 597 between November, 1983 and June, 1991 because of Local 597's animus against him, and refusal to refer him to work.... After the jury verdict and through June, 1991 Daniels returned to the referral hall for work, only to find that defendant's agents refused or discarded his [union] card, and denied him referrals". Moreover, the master concluded, "[t]hrough the present [June 24, 1993], Business Agents have refused to place his card in the drum." If this is indeed what happened, Local 597 was in violation of Title VII for the period between the trial and June 1993, and in contempt of court for the period after September 13, 1990. The master recommended a supplemental award of damages. By order of December 10, 1993, Judge Alesia adopted the master's report. Daniels took this as a signal to ask the judge for additional compensation. On March 16, 1994, the judge entered a minute order reading: "If plaintiff is unable to reach an agreement with defendant as to the amount of the judgment, plaintiff should file [a] motion directly with the Special Master. Plaintiff should refile motion with the Court simultaneously with the Special Master's recommendation."
 
 
 5
 Two years later, the master reported that he had been unable to bring the parties to agreement on the compensation Daniels should receive for Local 597's refusal to refer him for employment between 1988 and 1993. The master directed the parties to appear for a hearing on April 30, 1996. Before the hearing could occur, Judge Alesia discharged the master and dismissed the case, with this brief oral explanation:
 
 
 6
 I thought that issue [damages] was long gone. Technically, I really didn't even extend [the master's] appointment the last time this was up a year ago, because I assumed it was long gone. I think it is beyond the Special Master's direction from me. I also think, to award any other money than the original jury award in this, really deprives the defendant, it is entering a second judgment without the benefit of a right to a jury trial.... If you cannot resolve that matter, it seems to me there is going to have to be a second lawsuit filed.
 
 
 7
 Although the judge's 1994 order contemplates proceedings before the master on the question of damages, we will assume that the subject was beyond the master's original charge. Still, the district judge himself was empowered to take up the subject--more than empowered, the judge was obliged to do so.
 
 
 8
 Daniels waged a seven-year fight to obtain the reinstatement order the judge entered in 1990. If the union defied that order, as the master found that it did, then Daniels is entitled to a remedy. We are surprised to find the district court unwilling to enforce its order, first putting Daniels off for six years (between 1990 and 1996) and then dismissing the case without affording any relief for the apparent disobedience. Accused contemnors are not entitled to jury trials before judges may enter remedial civil orders, although they are entitled to jury trials before some kinds of punitive orders. See United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Moreover, it took the district court two years to enter judgment on the jury verdict, time during which injury continued, and for which Daniels is entitled to compensation. Until the Civil Rights Act of 1991, which went into force on November 21, 1991, neither side was entitled to a jury in an action under Title VII. So the union is not entitled to jury trial on account of claims that seek nothing more than make-whole relief for misconduct before that date--or for contempt of court at any time. If any element of Daniels's claims for conduct after November 20, 1991, entitles Local 597 to a jury trial, then the judge must hold one. Why one party's entitlement to a jury trial should lead a judge to dismiss a lawsuit outright eludes us.
 
 
 9
 Perhaps the district judge believes that post-trial discrimination must be dealt with in a new suit, but that is not correct. EEOC v. Enterprise Ass'n Steamfitters, 542 F.2d 579, 590 (2d Cir.1976); Patterson v. American Tobacco Co., 535 F.2d 257, 269 (4th Cir.1976). Wrongdoing after final judgment requires a new complaint, unless it amounts to contempt of court (which may or may not have occurred; whether the master's findings are correct is not before us for decision). Final judgment in this case was not entered until April 22, 1996. The judgment of 1990 covered only injury through 1988, plus limited equitable relief (reinstatement to the union). Both the master and, at least through 1994, the district judge, believed that not only the scope of additional equitable relief but also monetary compensation for injuries after trial remained to be determined. Would it not have been odd for Daniels to file a new charge with the EEOC in 1989, while the judge had the case under advisement, or in 1991, while the appeal was pending? Surely the union would have been entitled to protest such an irregular procedure. A judge should bring compensation current through the date of final judgment, which here came in 1996. The case is remanded so that this may be done, although the order terminating the consent decree is affirmed.