DAVID B., et al., Plaintiffs–Appellees,

v.

**Jess McDONALD, Director of the Illinois Department of Children and Family Services, Defendant–Appellant.**

No. 96–3729.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1997.

Decided June 16, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 5, 1997.*

---

* Judge Rovner took no part in the decision for     rehearing en banc.

Derrick M. Ford, Northwestern University Legal Clinic, Patrick T. Murphy, Ron Fritsch (argued), Office of the Cook County Public Guardian, Chicago, IL, for Plaintiffs–Appellee.

Barbara L. Greenspan (argued), Nancy K. Hall–Walker, Danielle J. Steimel, Office of the Attorney General, Chicago, IL, for Defendant–Appellant.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1981 the heads of three Illinois agencies—the Department of Mental Health and Developmental Disabilities, the Department of Children and Family Services (DCFS), and the State Board of Education—signed a consent decree promising to provide "appropriate" services to children, 17 years of age or less, who "[a]re in need of specialized services including, but not limited to child welfare, mental health and education." A program called the Governor's Youth Services Initiative (GYSI) coordinates the way these agencies deal with teenagers. In 1995 the legislature of Illinois enacted a statute curtailing the DCFS's authority to provide services to children over the age of 13 who have been adjudicated "delinquent" but have not been found to be abused, neglected, or dependent. 20 ILCS 505/5(*l*). "Delinquency" in Illinois means crime. 705 ILCS 405/5–3(1). Acts that lead to this designation run the gamut from vehicular hijacking to sexual assault to murder. Confronted with poten-

tially inconsistent obligations under the statute and the consent decree, the DCFS asked the district court to be relieved of any duty to provide services to delinquents over the age of 13. A change of law may justify, or even require, a modification of a consent decree, see *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *Evans v. Chicago*, 10 F.3d 474 (7th Cir.1993) (en banc), unless a federal law independent of the decree requires the parties to continue as before. The only federal law that supports the decree is § 504 of the Rehabilitation Act—according to the plaintiffs, before 1981 the agencies, all of which receive federal funds, denied assistance to some persons on account of their disabilities—and the DCFS argued that the Rehabilitation Act does not require it (or, indeed, any other agency of Illinois) to render special services to criminals.

Without addressing the agency's argument that federal law permits it to desist from providing services to delinquents over the age of 13, the district court denied the DCFS's motion to modify the decree. 950 F.Supp. 841 (1996). The district judge understood *Rufo* to permit modification of a consent decree only when "the substantive law ... has so clearly and dramatically changed as to render continued enforcement of the Consent Decree inequitable." 950 F.Supp. at 846. Federal law has not changed since 1981 in a sufficiently dramatic fashion to permit modification of the decree, the judge wrote. Id. at 846–51. As for *Evans*, which concluded that to prevent a state or local government from exercising its normal legislative powers, "there [must be] a substantial federal claim, not only when the decree is entered but also when it is enforced, [so] that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the [former] officeholder" (10 F.3d at 479), the district judge concluded that *Evans* need not be followed. 950 F.Supp. at 845–46. The passage just quoted appears in the lead opinion, to which only five of the eleven participating judges subscribed. Judge Ripple, who cast the sixth vote supporting the judgment in *Evans*, did not approve (or disapprove) this

part of the plurality opinion, see 10 F.3d at 483, and the district judge concluded that as a result *Evans* does not represent the law.

■ There is substantial doubt that the decree complies with either Article III or the Eleventh Amendment to the Constitution. The fifth paragraph in the decree's preamble recites that "[t]he defendants have, unrelated to the course of this litigation, established a program to provide services to plaintiffs, which, plaintiffs have agreed, meets their needs." This implies that, at the time the decree was entered, the parties were not adverse, and that the district court therefore lacked the case or controversy essential to federal jurisdiction. When a suit sets in motion a change of policy, a prospective judgment may be apt under the approach of *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 305 n. 14, 106 S.Ct. 1066, 1075 n. 14, 89 L.Ed.2d 232 (1986), and *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953): the decree prevents the defendants from reverting to their old ways as soon as the case ends. But a new policy unrelated to the litigation implies that the suit was unnecessary, and that the controversy is moot. What is more, because all three defendants are state officers, even a conclusion that the suit played some role in instigating a change of policy may not justify relief. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permits a court to enter an injunction against state officials, but the court must use the minimum coercive force essential to achieve compliance with federal law. If the state brings itself into conformity with national law, then the court should terminate the litigation, for at that point the legal fiction of *Young*—that the state officers are acting outside the scope of their authority, therefore are not the alter egos of the state, and therefore may be enjoined without violating the Eleventh Amendment—no longer applies. See *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Mercer v. Magnant*, 40 F.3d 893 (7th Cir.1994).

If the decree is consistent with Article III and the Eleventh Amendment, then the district court must grant the DCFS the relief it requests—if only because the decree has never had the effect the district court attributed to it. The DCFS asked the district court for relief because judges of the Circuit Court of Cook County recently directed the DCFS to take custody of some children, over 13 years of age, who had been adjudicated delinquent. These judges thought that the consent decree overrides 20 ILCS 505/5(*l*). Yet although the decree requires the three agencies to provide services to the defined class of children, it does not say which agency will provide which services. Indeed, it does not require the provision of any particular service to any child. Instead it provides that when the Juvenile Court of Cook County refers a youngster to the GYSI, there must be a meeting including representatives of the three agencies within nine working days, following which "[i]nterim and long term service recommendations will be formulated; a comprehensive service plan is then developed." The GYSI's "Coordinator will be responsible for fully implementing [the plan's] goals and objectives." That's it. There are no details about which agency does which things, or what a plan must contain. Perhaps the whole decree is ineffectual for lack of specificity under Fed.R.Civ.P. 65(d), which provides that an injunction "shall describe in reasonable detail … the act or acts sought to be restrained". See also *Schmidt v. Lessard*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). But whatever the decree may do, it does not explicitly direct the DCFS to provide services to persons over the age of 13 who have been adjudicated delinquent. It says that the State of Illinois must provide some assistance under a "comprehensive service plan" (whatever that may be), but when services of any kind are appropriate, what services those may be, how they are to be rendered, and by which agency, are things Illinois may work out for itself. Whatever ambiguity lurks in this decree—and there must be some, for why else did the state judges direct the DCFS to disregard 20 ILCS 505/5(*l*) on the decree's authority?—could and should have been dispelled by the district court.

Let us suppose, however, that we have not read between the lines correctly, and that the decree imposes on the DCFS an obligation to take custody of some persons over the age of

13 who have been adjudicated delinquent. Then the decree should be modified to eliminate the conflict between its requirements and the new state statute. The district court believed that modification is proper only when "the substantive law ... has so clearly and dramatically changed as to render continued enforcement of the Consent Decree inequitable." 950 F.Supp. at 846. Moreover, the court thought, only a change in *federal* substantive law matters. That is not what *Rufo* holds; indeed, the district court's approach is redolent of the losing side's contentions in *Rufo.* According to the Supreme Court, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." 502 U.S. at 383, 112 S.Ct. at 759 (footnote omitted). The Court did not distinguish between legal and factual circumstances, or between state and federal law; change in any of these things may justify modification under Fed.R.Civ.P. 60(b)(5).

The Rehabilitation Act was reworded in 1990 when Congress enacted the Americans With Disabilities Act, but the amendment does not change anything substantive. The statute now reads: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). The qualifier "solely by reason of her or his disability" makes it essential to determine the ground on which exclusion from a program is based. That directs attention to the 1995 change in Illinois law: certain youths now are excluded from certain services provided by the DCFS, not by reason of disability (as might have been true before 1981) but by reason of criminal conviction. Such a change is "significant" in *Rufo*'s terminology, and modification of the decree so that the DCFS may conform its activities to both state and federal law would be "suitably tailored to the changed circumstance."

Plaintiffs do not contend that the crimes of those class members who have been adjudicated delinquent can be attributed to their disabilities. Cf. *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). For example, attention deficit hyperactivity disorder, which some class members display, may cause difficulties in learning and social interactions, but it does not "cause" murder or sexual assault—not in the legal sense, anyway, even if those with the disorder are statistically more likely to commit crimes. See *Despears v. Milwaukee County,* 63 F.3d 635 (7th Cir.1995); cf. *Doe v. Board of Education of Oak Park,* 115 F.3d 1273, 1279–81 (7th Cir.1997). Nothing in the Rehabilitation Act requires states to disregard a person's criminal activity when deciding what social-welfare services to provide, and through which agency—even if a particular condition of eligibility happens to bear more heavily on those who have disabilities. See *Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996); cf. *Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Vaughn v. Sullivan,* 83 F.3d 907, 912–13 (7th Cir.1996). Plaintiffs do not disagree with this view of the Rehabilitation Act so much as they disagree with the DCFS's reading of its options under state law. Response requires nothing more than a citation to *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984): given the Eleventh Amendment, a federal court may not use disagreement with a state official's understanding of state law as the basis of relief.

Some of the district court's analysis implies that a state is stuck with its bargain if plaintiffs never had much of a case to begin with. If this class could not have prevailed on the merits in 1981, then adjustments in state and federal law that weaken its claims cannot be a "significant" change in the law. On this approach, the weaker the claim under federal law, the more enduring the rights under a consent decree. A state will be bound forever because it cannot demonstrate that the law has changed in its favor. *Evans* cuts off arguments of this kind by making a

substantial federal claim essential to both entry and enforcement of a consent decree. Although, as the district judge observed, the critical language appears in an opinion joined by only five of the eleven members of the en banc court, the judge erred in supposing that if *Evans* does not by itself establish the point, then the proposition is not the law. Disagreement within the court in *Evans* had more to do with application of the principles to the problem at hand than with the identification of the rules that govern the entry, modification, and dissolution of consent decrees. See 10 F.3d at 485 (Flaum & Kanne, JJ., dissenting, because they believed that a colorable constitutional theory supported the decree when entered *and* at the time of the decision en banc).

The plurality in *Evans* did not draw its legal analysis from thin air. The opinion discusses decisions of the Supreme Court, of this court, and of other circuits, as well as some powerful considerations of political legitimacy—such as the fact that in a democracy the people may vote out politicians whose acts displease them, and elect new representatives who promise change. See 10 F.3d at 477–80. The Rehabilitation Act does not authorize politicians who hold office in one year to prevent their successors from charting a different course. See Michael W. McConnell, *Why Hold Elections? Using Consent Decrees to Insulate Policies from Political Change,* 1987 U. Chi. Legal Forum 295. Cases predating *Evans* accordingly hold that it takes more than the consent of public officials to support a federal court's entry and enforcement of an injunction; it takes a substantial claim based on federal law. *Alliance to End Repression v. Chicago,* 742 F.2d 1007 (7th Cir.1984) (en banc); *People Who Care v. Rockford Board of Education,* 961 F.2d 1335 (7th Cir.1992); *Kasper v. Board of Election Commissioners,* 814 F.2d 332, 340 (7th Cir.1987); *White v. Roughton,* 689 F.2d 118 (7th Cir.1982). See also Larry Kramer, *Consent Decrees and the Rights of Third Parties,* 87 Mich. L.Rev. 321 (1988). The message has been reiterated in this circuit since *Evans.* E.g., *Komyatti v. Bayh,* 96 F.3d 955, 962–63 (7th Cir. 1996). As *Komyatti* observed, the substantial-claim requirement does not permit a party to dis-

regard the decree, but it does justify modification or vacatur. See also *Sweeton v. Brown,* 27 F.3d 1162 (6th Cir.1994) (en banc). The district court should have implemented, rather than disdained, this element of the plurality opinion in *Evans.*

To sum up: on remand the district court must first determine whether a case or controversy existed when the decree was entered. If yes, then the court has two additional responsibilities. It must either construe or modify the decree forthwith to permit Illinois to reallocate tasks among its agencies and to reduce the services offered to persons adjudicated delinquent. Then it must determine whether a substantial federal claim supports the decree as a whole; if not, the entire decree must be lifted and the task of shaping public policy be restored to persons today holding political office—subject only to whatever limitations federal law and the Supremacy Clause now place on the operation of the state's social-welfare system. See *B.H. v. McDonald,* 49 F.3d 294, 301–03 (7th Cir.1995). Plaintiffs would be free at this stage to argue, for example, that the way in which the DCFS proposes to conduct itself would violate the Americans With Disabilities Act, which supplements the Rehabilitation Act. But arguments based on the ADA are new claims, which must be made and proved; they do not breathe life into a decree entered under a different legal regime. Relief under a statute enacted in 1990 cannot be justified on the basis of the agencies' consent in 1981. Cf. *Daniels v. Pipe Fitters Ass'n,* 113 F.3d 685, 687 (7th Cir. 1997). The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.