DAVID B., et al., Plaintiffs–Appellees,

v.

Jess McDONALD, Director of the Illinois Department of Children and Family Services, et al., Defendants–Appellants.

No. 98–1796.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1998.

Decided Sept. 28, 1998.

Patrick T. Murphy (argued), Office of the Cook County Public Guardian, Chicago, IL, for plaintiff–appellee.

Barbara L. Greenspan (argued), A. Benjamin Goldgar, Office of the Attorney General, Chicago, IL, for defendant–appellant.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Now almost 20 years old, this case has reached the end of the line. It was filed in 1979 by the Cook County Public Guardian on behalf of delinquent children with emotional or mental problems.[1] The Public Guardian asked the court to require the defendants to provide for class members the same suite of

---

1. The district court certified a class of "[a]ll children residing or found in Cook County, Illinois who:

A. Are seventeen years of age or less, or, if the person is a ward of the Juvenile Court, twenty years of age or less; and
B. Are referred to Juvenile Court; and
C. Are alleged to have engaged in conduct or whose parents are alleged to have engaged in conduct in violation of the Illinois Juvenile Court Act; and
D. Are in need of specialized services including but not limited to child welfare, mental health and education; and
E. Have been denied appropriate services by one or more of the defendants, their agents and employees, after having made the necessary applications for such services."

Neither the class definition nor the consent decree defines "appropriate services" or identifies which children are "in need" of them.

social services they supplied to other emotionally or mentally handicapped youngsters who had not engaged in misconduct. The suit was settled when the defendants promised to continue operating a new program called the Governor's Youth Services Initiative:

> In 1981 the heads of three Illinois agencies—the Department of Mental Health and Developmental Disabilities, the Department of Children and Family Services (DCFS), and the State Board of Education—signed a consent decree promising to provide "appropriate" services to children, 17 years of age or less, who "[a]re in need of specialized services including, but not limited to child welfare, mental health and education." A program called the Governor's Youth Services Initiative (GYSI) coordinates the way these agencies deal with teenagers. In 1995 the legislature of Illinois enacted a statute curtailing the DCFS's authority to provide services to children over the age of 13 who have been adjudicated "delinquent" but have not been found to be abused, neglected, or dependent. 20 ILCS 505/5(*l*). "Delinquency" in Illinois means crime. 705 ILCS 405/5–3(1). Acts that lead to this designation run the gamut from vehicular hijacking to sexual assault to murder. Confronted with potentially inconsistent obligations under the statute and the consent decree, the DCFS asked ... to be relieved of any duty to provide services to delinquents over the age of 13.

*David B. v. McDonald,* 116 F.3d 1146, 1147 (7th Cir.1997). After the district judge denied the agency's request, we remanded so that the court could determine whether the case is within federal jurisdiction and, if it is, whether "a substantial federal claim supports the decree as a whole" today. *Id.* at 1150. The district court concluded that the eleventh amendment deprives the court of jurisdiction and vacated the consent decree. 1997 U.S. Dist. LEXIS 19529. On a motion for reconsideration, however, the judge changed his mind and held that the court has jurisdiction and that a substantial federal claim continues to exist—although the judge did relieve the defendants of several obligations under the decree. 1998 U.S. Dist. LEXIS

2982. According to the district court, the substantial federal claim rests on the proposition that when a state "takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well–being." *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

■ The principle that custodians must protect their wards supplies a "substantial federal claim" only if there is reason to believe that Illinois is violating its constitutional obligations (or would be doing so, but for the consent decree). But the district court did not say that the Constitution requires a state to provide youths with "specialized services including, but not limited to child welfare, mental health and education." Illinois endeavors to provide safety, food, medical attention, education and other social services to youngsters in its custody, so to the extent some services may be constitutionally essential, see *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *D.W. v. Rogers,* 113 F.3d 1214 (11th Cir.1997), there is still no substantial federal claim that Illinois has failed to meet its obligations. The district judge did not identify any constitutionally required service that Illinois withholds. Counsel for the plaintiff class contends that the end of the consent decree or the GYSI program would itself be the violation of due process. That's untenable, for reasons we articulated in one of *DeShaney's* precursors. *Archie v. Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). Consent decrees are vacated all the time—they have been vacated wholesale under 18 U.S.C. § 3626(b), part of the Prison Litigation Reform Act—and it would be absurd to say that consent decrees (or related state legislation, in this case 20 ILCS 505/17a–11 establishing the GYSI) establish the meaning of the Constitution, so that vacatur is impossible. See *Hadix v. Johnson,* 133 F.3d 940 (6th Cir. 1998).

■ A thorough search for a "substantial federal claim" that might support this consent decree is unnecessary, however, be-

cause the district judge was right the first time: the eleventh amendment, extended in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), to federal-question cases, deprives the court of jurisdiction. Plaintiffs can't sue the state in its own name, see *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and used the standard end-run: they sued named officeholders. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Young* treats public officials who violate federal law as renegades, acting *ultra vires*, who therefore may be enjoined without enjoining the state itself. But a suit against a public official as representative of the state (rather than as a renegade) is a suit against the state. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). So if the Director of the Department of Corrections violated the due process clause by failing to educate confined juveniles, the juveniles could not sue the state's Superintendent of Education and demand that he supply an education on behalf of the state; that would be at war with the foundation of *Young* because it would treat the state and its agents as fungible. To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law.

■ Back in 1979, the three defendants were appropriate to the theory of the case. Plaintiffs contended that § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), required these defendants' agencies to provide delinquent youths with the same services they provided to other teenagers with similar emotional or mental problems, but no history of criminal activity. Any difference, the complaint alleged, is disability discrimination. Last time the case was here we concluded that this contention, if it had ever supplied a federal claim substantial enough

to impose on the state a long-term obligation that its legislature is powerless to alter, does so no longer. 116 F.3d at 1149. Plaintiffs' new theory, based on the due process clause, requires new defendants: the juveniles' custodians, for it is only custody that creates the "corresponding duty to assume some responsibility for [the ward's] safety and general well-being." The district judge wrote:

> When a delinquent minor becomes a ward of the court, the court assumes enormous control over his or her life: to pick a few examples, the court may appoint a new guardian or custodian, order the minor committed to the Department of Corrections or DCFS (depending on his or her age), declare the minor to be emancipated, or place the minor on probation. See 705 ILCS 405/5–23. In a sense, the court becomes a "super-guardian" with the power to select (and, when necessary, to change) the minor's actual guardians and custodians, and once the court assumes this power it may retain it until the child attains the age of 19 years, see 705 ILCS 405/5–34; *In re W.C.*, 167 Ill.2d 307, 657 N.E.2d 908, 918, 212 Ill.Dec. 563 (Ill.1995).

Although the rationale of *DeShaney* could support relief against custodians such as the supervisors of the "residential treatment" centers where class members may be detained, or even perhaps that "super-guardian" the Juvenile Court, it cannot support relief against the defendants in this case—not unless all senior public officials are treated as alter egos of the real party in interest, the state itself. That is how the district court treated them, which brings the case within *Hans*.

■ Plaintiffs are free to initiate proceedings against any state official who today has custody of class members and is violating federal statutory or constitutional law. Our three defendants and their agencies, however, do not exercise the control that could support a claim under *DeShaney*.[2] The Ju-

---

**2.** Judge Dempsey of the Juvenile Justice Division of the Circuit Court of Cook County described the status of emotionally or mentally handicapped juvenile delinquents in the plaintiff class who are held for "residential treatment" but are not sent to the Department of Corrections for incarceration: "The juvenile court does not place the child in the custody of DCFS or GYSI or commit the child to DCFS or GYSI as guardian. The court does not appoint any custodian or guardian for the children. The parent retains all parental rights except the right to determine where the child will reside during the period of probation. The child is a ward of the court and not of any of the agencies that participate in GYSI."

venile Court, which may exercise custody (or determine who else does), is not an appropriate defendant; instead of haling the court and its judges into a federal forum, the plaintiffs must make their argument to the state judges *in* the delinquency or guardianship litigation, and appeal any adverse decisions through the usual hierarchy. See *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Nelson v. Murphy,* 44 F.3d 497 (7th Cir.1995). Inferior federal courts are not authorized to review the decisions of the Juvenile Court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *T.W. v. Brophy,* 124 F.3d 893 (7th Cir.1997). State courts may compel the defendants to implement 20 ILCS 505/17a–11, if that statute survives the termination of the consent decree and more recent state laws, such as 20 ILCS 505/5(*l*). Enforcement of state law against a state is not a task that the eleventh amendment permits a federal court to perform. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *Young* leaves the door of the federal courthouse ajar for claims based on federal law, but only if *Young*'s premises obtain. When the theory behind this litigation moved from the Rehabilitation Act to the due process clause, the identity of the appropriate defendants changed, and the case against these three defendants therefore moved from the domain of *Young* to that of *Hans.*

The judgment of the district court is vacated, and the case is remanded with instructions to set aside the consent decree and dismiss the proceeding for lack of subject-matter jurisdiction.