Carol WINKLER, et al.

v.

INTERIM SERVICES, INC. d/b/a
Interim Healthcare.

No. 3:98–0042.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 12, 1999.

Gordon Bonnyman, Jr., Nashville, TN, for plaintiffs.

John S. Hicks, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court is Defendant's Motion to Dismiss (Docket No. 50). For the reasons stated herein, Defendant's Motion is DENIED.

### FACTS

Plaintiffs are elderly and disabled Medicare beneficiaries who receive home health care services from Defendant. Plaintiffs allege that they are essentially being "dumped" and abandoned by Defendant as a result of recent changes in the Medicare reimbursement rules. Plaintiffs contend that Defendant's refusal to provide them medically necessary home health care services is based simply upon the fact that Plaintiffs are all heavy service users and economically undesirable patients. Plaintiffs allege causes of action for breach of contract, violations of the Rehabilitation Act of 1973, common law abandonment, outrageous conduct, breach of the duty of care, and violations of the Tennessee Consumer Protection Act.

This Court issued a Preliminary Injunction Order on February 23, 1998 (Docket No. 27), in which the Court enjoined and restrained Defendant from discontinuing the provision of home health care services to Plaintiffs Mayes and Rahe because of Defendant's determination that Plaintiffs are not "homebound" or because of their status as "heavy users" of home health care services. *See* Docket No. 27, p. 5 (Preliminary Injunction Order attached hereto as Appendix A).

Defendant appealed this Court's Preliminary Injunction Order to the Sixth Circuit Court of Appeals (Docket No. 36); this Court denied Defendant's Motion for Stay of the Preliminary Injunction (Docket No. 63) and stayed all pending motions (Docket No. 66). Upon a motion to voluntarily dismiss, the Sixth Circuit Court of Appeals dismissed the appeal (*see* Docket No. 76). By agreement of the parties, Defendant having closed its Nashville office and rendered moot the injunction (*see* Docket Nos. 74, 75 and 79), this Court vacated the Preliminary Injunction Order and reinstated all pending motions (*see* Docket No. 28). ·

Defendant has moved to dismiss this action, arguing that the Court does not have subject matter jurisdiction; that several of Plaintiffs' claims fail to state claims for which relief may be granted; and that Plaintiffs have failed to join an indispensable party to their claims.

### MOTIONS TO DISMISS

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.1994), *cert. denied,* 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). The motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.,* 856

**1028**

F.Supp. 1229, 1232 (S.D.Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).

In deciding a motion to dismiss, the function of the district court is to test the legal sufficiency of the complaint. *City of Toledo v. Beazer Materials and Services, Inc.,* 833 F.Supp. 646, 650 (N.D.Ohio 1993). The court is without authority to dismiss claims unless it can be demonstrated beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Id.*

### SUBJECT MATTER JURISDICTION

In the Preliminary Injunction Order, this Court found that it has subject matter jurisdiction of this case. *See* Docket No. 27 (attached hereto as Appendix A), p. 2. In denying Defendant's Motion to Stay the Preliminary Injunction, this Court reiterated that finding. *See* Docket No. 62, p. 2. Nonetheless, Defendant argues that the Court lacks subject matter jurisdiction to review Plaintiffs' claims because they arise under the Medicare Act.

The Medicare Act, by incorporating portions of the Social Security Act, provides that no action against the United States, Secretary or Department of Human Services, or any officer or employee thereof shall be brought under section 1331 (federal question jurisdiction) or 1346 (United States as a defendant) of Title 28 to recover on any claim arising under the Medicare Act. 42 U.S.C. §§ 405(h) and 1395ii. It also requires exhaustion of administrative remedies with regard to decisions of the Secretary or Department of Human Services. 42 U.S.C. §§ 405(g) and 1395ii.

In this case, Plaintiffs do not seek review of any decision by the Secretary or Department of Human Services or any officer or employee thereof. The Defendant is not the Secretary or Department of Human Services or any officer or employee thereof.

*Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), cited by Defendant, was an action challenging a formal ruling by the Secretary of Health and Human Services.[1] This case is not. Indeed, the very quote cited by Defendant includes the following language: "But Congress … struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review *of the Secretary's decision* takes place." *Heckler,* 104 S.Ct. at 2028 (emphasis added). Here, the Plaintiffs do not challenge any decision by the Secretary. Plaintiffs challenge decisions by Defendant, a non-governmental entity, to refuse, terminate and/or reduce home health care services.

The plaintiffs in *Heckler* sought a declaration that the Secretary's refusal to provide Medicare payments for a certain surgery was unlawful and sought an injunction barring the Secretary from forcing claimants to pursue individual administrative appeals in order to obtain payment. *Heckler,* 104 S.Ct. at 2019. Here, Plaintiffs do not ask anything of the Secretary or the U.S. Government. Neither the Secretary nor the U.S. Government made the decisions to deny or refuse services to these Plaintiffs; Defendant did. In *Heckler,* the relief sought was an award of Medicare benefits. Here, the relief sought is the provision of services. Put another way, Plaintiffs here do not claim that Medicare should pay for certain benefits; nor do they seek payment of or a determination of eligibility for Medicare benefits. Plaintiffs seek the provision of services.

As Plaintiffs note, they could not file their current claims with the Secretary. As the Supreme Court stated in *Heckler,* a claim can be filed for scrutiny by the Secretary only *after* the medical service for which payment is sought has been furnished. *Heckler,* 104 S.Ct. at 2025. Plaintiffs cannot seek to recover benefits for services which Defendant has refused to provide.

1. In all the cases cited at page 7 of Defendant's brief (Docket No. 51), the defendant was the U.S. government or an official thereof.

Accordingly, and for the reasons stated earlier by this Court[2] (Docket Nos. 27 and 62), Defendant's Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

## REHABILITATION ACT CLAIMS

Defendant asserts that Plaintiffs' Rehabilitation Act claims must be dismissed because that Act does not apply to discrimination among similarly handicapped persons. The parties agree that to state a claim under Section 504 of the Act, Plaintiffs must show (1) that they are "handicapped persons" under the Act; (2) that they are "otherwise qualified" for participation in the program; (3) that they were excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely by reason of their handicaps; and (4) the program in question received federal financial assistance. *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir. 1988).

Although not clearly identified with any particular element of the Rehabilitation Act claims, Defendant's argument is that Plaintiffs' claims fail because they do not allege discrimination between disabled and non-disabled persons. Rather, the alleged discrimination in this case is based upon the severity of Plaintiffs' disabilities, a discrimination which Plaintiffs contend is prohibited by the Rehabilitation Act.

Defendant cites *People First of Tennessee v. Arlington Developmental Center,* 878 F.Supp. 97, 101 (W.D.Tenn.1992) for the proposition that Section 504 of the Rehabilitation Act does not cover discrimination among similarly handicapped persons. In that case, the court found that an action asserting that certain handicapped plaintiffs had been victims of discrimination vis-a-vis other handicapped persons must fail. *Id.*

In *Messier v. Southbury Training School,* 916 F.Supp. 133 (D.Conn.1996), however, the court found that the regulations promulgated under Section 504 clearly prohibit discrimination based upon severity of disability. *Id.,* at 141; 45 C.F.R. § 84.4(b)(1)(iv).[3] As that court noted, an interpretation of an agency charged with the administration of a statute is entitled to substantial deference and should be given controlling weight unless such interpretation is arbitrary, capricious or manifestly contrary to the statute. *Id.; see also McGuire v. Switzer,* 734 F.Supp. 99, 115 (S.D.N.Y.1990) ("While defendants contend that § 84.4(b) applies only to disabled persons vis-a-vis non-disabled persons, they are unable to point to any language in the provision of the accompanying text or to any other evidence to support this position.")

The *Messier* court also noted that numerous courts have recognized that Section 504 prohibits discrimination on the basis of the severity of a person's disability. *Messier,* 916 F.Supp. at 141. For example, in *Martin v. Voinovich,* 840 F.Supp. 1175, 1192 (S.D.Ohio 1993), the court held that nothing in the language of Section 504 suggests that it can never apply between persons with different handicaps. Rather, the court noted, a strict rule that Section 504 can never apply between persons with different disabilities would thwart the Act's goal of eliminating handicap-based discrimination and segregation. *Id.* "The relevant inquiry is whether the application [of] § 504 between persons with different or varying degrees of disability furthers the goal of eliminating disability-based discrimination." *Id.*

Also, in *Jackson v. Fort Stanton Hospital and Training School,* 757 F.Supp. 1243, 1299 (D.N.M.1990), *rev'd in part on other grounds,* 964 F.2d 980 (10th Cir.1992), the Court stated that "[t]he severity of plaintiffs' handicaps is itself a handicap which, under § 504, cannot be the sole reason for denying plaintiffs access to community programs." The court also held: "Defendants' failure to

---

2. For example, the Court also found that, alternatively, if exhaustion of administrative remedies is required, it is waived in this case because the claims are collateral and irreparable harm from the administrative wait would result. *See* Docket No. 27 (Appendix A hereto), p. 3; *see also Bowen v. City of New York,* 476 U.S. 467, 483–84, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986); *Day v. Shalala,* 23 F.3d 1052, 1059 (6th Cir.1994).

3. The regulation prohibits provision of different or separate aid, benefits or services to handicapped persons *or to any class of handicapped persons.* 45 C.F.R. § 84.4(b)(1)(iv).

accommodate the severely handicapped in existing community programs while serving less severely handicapped peers is unreasonable and discriminatory." *Id.*

Several courts have concluded that the severity of one's disability can itself be disability and that denial of services based on the severity of a handicap would contravene Section 504. *See, e.g., David B. v. Patla*, 950 F.Supp. 841, 848 (N.D.Ill.1996), *vacated on other grounds*, 116 F.3d 1146 (7th Cir.1997); *Wagner by Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1016, n. 15 (3d Cir. 1995); *Plummer v. Branstad*, 731 F.2d 574, 578 (8th Cir.1984) (assuming without deciding that the severity of the plaintiffs' handicaps is itself a handicap which, under Section 504, cannot be the sole reason for denying benefits); *Clark v. Cohen*, 613 F.Supp. 684, 692, n. 6, and 693 (E.D.Pa.1985).

■ Based upon the agency regulations and these authorities, the Court finds that Plaintiffs have stated a claim for which relief may be granted for discrimination under the Rehabilitation Act, based upon the severity of their disabilities. Thus, Defendant's Motion to Dismiss Plaintiffs' Rehabilitation Act claims is DENIED.[4]

## FAILURE TO JOIN AN INDISPENSABLE PARTY

Defendant claims that Plaintiffs have failed to join an indispensable party to this litigation, the Health Care Financing Administration ("HCFA"). Under Rule 19(a) of the Federal Rules of Civil Procedure, the Court must first determine whether a party is necessary to the action and should be joined if possible. *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993).

A person should be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave the parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

■ Here, HCFA is not a necessary party to this action. Plaintiffs do not seek relief which would require any action by HCFA. As indicated above, Plaintiffs seek the provision of medical services, not Medicare benefits. This Court can provide complete relief without the presence of HCFA in this action. In addition, nothing about the relief sought would impair or impede HCFA's ability to implement or fund Medicare. Similarly, nothing about the relief sought by Plaintiffs herein would subject Defendant to double, multiple or inconsistent obligations. Even if the Court orders Defendant to provide the medical services which Plaintiffs seek, whether HCFA pays for such services through Medicare is a different and separate issue.

Accordingly, Defendant's Motion to Dismiss for failure to join an indispensable party is DENIED.

## OUTRAGEOUS CONDUCT

■ Defendant also contends that Plaintiffs' state law claims for outrageous conduct must be dismissed. In Tennessee, damages may be recovered for serious emotional distress intentionally or recklessly inflicted by outrageous conduct which exceeds in degree willful and wanton misconduct. *Gann v. Key*, 758 S.W.2d 538, 546 (Tenn.Ct.App.1988).

■ "It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in

---

4. Defendant also contends that Plaintiffs' Rehabilitation Act claims should be dismissed because claims may not be brought under that Act where services were merely reduced and not eliminated. However, the Court construes Plaintiffs' Amended Complaints to allege termination and threatened termination of services, not mere reduction of services.

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement Second of Torts, § 46, comment d; *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274 (Tenn.1966).

█ The two factors which must concur in order to outweigh the policy against allowing an action for the infliction of mental disturbance are: (a) the conduct complained of must have been outrageous, not tolerated in civilized society, and (b) as a result of the outrageous conduct, there must be serious mental injury. *Id.*

█ Here, the Court finds that the alleged misconduct of the Defendant states a claim for outrageous conduct. Whether Defendant's actions or failures to act rise to the level of outrageous conduct will be a decision for the jury, having considered all the facts and circumstances of this case. Accordingly, Defendant's Motion to Dismiss Plaintiffs' outrageous conduct claim is DENIED.

## TENNESSEE CONSUMER PROTECTION ACT

Finally, Defendant argues that Plaintiffs' Tennessee Consumer Protection Act ("TCPA") claims fall within an exemption in that Act and must be dismissed. The specific exemption claimed by Defendant is Section 47–18–111, which provides that the Act does not apply to acts or transactions required or specifically authorized under laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers of the State or the United States. Tenn.Code Ann. § 47–18–111(a)(1). Defendant contends that the very acts which Plaintiffs challenge are mandated by the Medicare Act and its regulations.

█ For the reasons stated above, this action does not arise under the Medicare Act.

Defendant cites no support whatsoever for its "belief" that the very actions challenged by Plaintiffs were mandated by federal law. The burden of proving an exemption to the TCPA falls upon the person claiming such an exemption. Tenn.Code Ann. § 47–18–111(b). Defendant has not met that burden.

Accordingly, viewing the Amended Complaints in the light most favorable to the Plaintiffs, the Court finds that the exemption cited by Defendant does not apply. Accordingly, Defendant's Motion to Dismiss Plaintiffs' TCPA claims is DENIED.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss (Docket No. 50) is DENIED.

IT IS SO ORDERED.

## APPENDIX A

### PRELIMINARY INJUNCTION ORDER

Pending before the Court is a Motion for a Preliminary Injunction filed by Plaintiffs Ruby Mayes and Helen Rahe.[1] The Motion asks this Court to issue a preliminary injunction enjoining Defendant Interim Healthcare and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discontinuing provision of home health care services to Plaintiff Mayes or Plaintiff Rahe pending a resolution of this case on the merits.

The Court held a hearing on the Motion on February 19, 1998, and February 20, 1998, which was attended by counsel for all parties and at which the Court heard testimony from witnesses for both the Plaintiffs and the Defendant.

For the reasons described below, as well as the reasons stated from the bench, the Motion is GRANTED, on the terms and conditions stated herein.

Plaintiffs allege in their Complaint that Plaintiffs, all disabled and elderly Medicare beneficiaries, are essentially being "dumped" and abandoned by Defendant as a result of

---

1. At the hearing, the Court allowed the oral motion of Plaintiffs' counsel to add Helen Rahe as a named Plaintiff in this case.

recent changes in the Medicare reimbursement rules, simply because they are economically undesirable patients, since they are all heavy service users. Plaintiffs allege causes of action for breach of contract, violations of the Americans with Disabilities Act, violations of the Rehabilitation Act, violations of the Tennessee Consumer Protection Act, common law abandonment and outrageous conduct.

This Court issued a Temporary Restraining Order (Docket No. 10) on February 9, 1998.

In support of their Motion for a Preliminary Injunction, Plaintiffs submitted the testimony of Vicki Tataryn and Sandra Hodess and documents marked Plaintiffs' Exhibit Nos. 1—22.

In opposition to the Motion for a Preliminary Injunction, Defendant submitted the testimony of Karen Carnes, Lachelle Fitzgerald and Yolanda Hensley and documents marked Defendant's Exhibit Nos. 1—3.

The parties also rely on the documents used at the hearing on the Motion for a Temporary Restraining Order.

In determining whether to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) whether the movant has shown a strong or substantial likelihood on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to others; and (4) whether the public interest is advanced by the injunction. *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir.1997).

The Court finds, initially, that it has subject matter jurisdiction of this case. The claims do not require the exhaustion of administrative remedies and are not preempted by the Medicare Act. Specifically, the Court finds that Plaintiffs' claims do not "arise under the Medicare Act" for purposes of exhaustion of administrative remedies or preemption of state law. Alternatively, if exhaustion of administrative remedies is required, it is waived because the claims are collateral and irreparable harm from the administrative wait would result.

The Court finds that the core of this case is Plaintiffs' claim that Defendant decided to terminate Plaintiffs' home health services based upon a change in the reimbursement of Medicare payments, not based upon a change in Plaintiffs' status. The Court finds that this case is primarily a challenge to the termination of home health care services based on an improper or discriminatory criterion—i.e., heavy utilization of services—not a case about whether Plaintiffs are entitled to benefits.

Therefore, the Court finds that it has jurisdiction to hear this matter.

Based on the Motion, pleadings, testimony, exhibits, affidavits, briefs, representations of counsel and the entire record, the Court finds:

(1) Plaintiffs have demonstrated a strong or substantial likelihood of success on the merits on their breach of contract and Rehabilitation Act claims. The Court finds that Plaintiffs have demonstrated that a contract existed between Defendant and them. In Tennessee, there is implied in every contract an obligation of good faith and fair dealing. Tenn.Code Ann. § 47–1–203.

The basis for the Court's decision on likelihood of success on the merits of the breach of contract claim is Defendant's decision to terminate services to Plaintiff Mayes before there was any documentation to support such a termination and before any evaluation was conducted to determine any change in status of the patients.

Specifically, the Court relies upon Plaintiffs' Exhibit Nos. 2–12 and 2–13; the testimony of Yolanda Hensley that Defendant was making plans to transfer or discharge patients because of the changes in Medicare reimbursement; and Plaintiffs' Exhibit No. 2–22, in which Defendant certified, as late as January 12, 1998, that Plaintiff Mayes was "home-bound." The Court also relies upon Plaintiffs' Exhibit Nos. 9–1 and 12–6.

In addition, the Court finds a probability of success on the merits on Plaintiffs' Rehabili-

tation Act[2] claim because the Plaintiff has presented evidence that Defendant's decision to terminate services was based upon a discriminatory reason—severity of disability and heavy utilization of home health care.

The Court finds that the balance of the evidence supports a finding that Plaintiff Mayes is "home-bound."[3] Specifically, the Court relies upon the testimony of Vicki Tataryn, who saw Mrs. Mayes for more than three years; and Sandra Hodess, who saw Mrs. Mayes as late as the day before trial; and the nursing notes of Belinda Jennings, who continued to certify Mrs. Mayes as "home-bound" as late as this month, even though her supervisor believed and was instructing her otherwise.

In addition, the Court is not persuaded that Mrs. Mayes' son is qualified, at this time, to give her the insulin shots, particularly in light of Ms. Fitzgerald's testimony that hospitals require two nurses to draw and administer insulin shots to patients. Mr. Mayes is a sanitation worker with no medical training.

(3) Plaintiffs have demonstrated that they will suffer immediate and irreparable injury, harm, loss, or damage if injunctive relief is not granted pending trial. Specifically, the Court finds that Plaintiffs cannot later go back and get home health services which have been denied them. The Court also finds that the lack of home health care for Mrs. Mayes could result in severe injury.

(4) Thus, the balance of relative harms among the parties weighs in favor of Plaintiffs and against Defendant.

(5) The public interest will not be harmed by injunctive relief pending trial and will in fact be advanced.

It is, therefore, ORDERED that, pursuant to Federal Rule of Civil Procedure 65, that: Defendant Interim Healthcare, Inc. and its officers, agents, employees, servants, attorneys, and all persons in active concert or

participation with them are hereby enjoined and restrained from discontinuing the provision of home health care services to Plaintiffs Mayes and Rahe because of Defendants' determination that Plaintiffs are not "home-bound" or because of their status as "heavy users" of home health care services, pending further order of the Court.

This preliminary injunction is effective upon its issuance on February 20, 1998 at 3:00 p.m.

Under the facts presented, no bond is required to be posted by Plaintiffs.

This case is referred to the Magistrate Judge for further customized case management.

The trial of this case shall be expedited and the Magistrate Judge shall establish a scheduling order accordingly.

It is so ORDERED.

---

2. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

3. The parties have stipulated that Plaintiff Rahe was "home-bound" prior to her recent hospitalization. The Court finds that Mrs. Mayes has a

normal inability to leave home; experiences a considerable and taxing effort to leave; and absences from home are infrequent, short duration, or to receive medical care.