ROBERT GREVE *et al.*, Plaintiffs-Appellees, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellants.

Second District   No. 2—88—0184

Opinion filed December 29, 1988.

James E. Ryan, State's Attorney, of Wheaton (George J. Sotos, Assistant State's Attorney, of counsel), for appellant County of Du Page.

James R. Schirott, of Schirott & Associates, P.C., of Itasca (James G. Sotos, of counsel), for other appellants.

Aldo E. Botti, of Botti, Marinaccio, DeSalvo & Pieper, Ltd., of Oak Brook (John R. Wimmer, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiffs, Robert and Carol Greve and Park Ridge Youth Campus, filed suit in the circuit court of Du Page County against defendants, the County of Du Page, the Du Page County Board, and the chairman and individual members of the county board (collectively referred to hereinafter as the county), seeking a writ of *mandamus* ordering the county to pay outstanding vouchers submitted to the county by the Du Page County Probation Department. The vouchers represented the amounts allegedly owed to plaintiffs for providing the care and support of minors placed with them pursuant to section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7). The circuit court denied the county's motion for summary judgment and granted plaintiffs' motion for judgment on the plead-

ings. The county appeals, contending that the circuit court erred in ordering the county to provide funding for youth care and support in excess of the amount requested by the judiciary for inclusion in the county's appropriation ordinance. For the reasons set forth below, we affirm.

In their complaint filed November 25, 1987, plaintiffs alleged that from time to time the circuit court for the Eighteenth Judicial Circuit had entered orders under sections 5—7 and 7—3(2) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, pars. 705—7, 707—3(2)), placing minors in the temporary care and custody of the plaintiffs and other providers of foster care and requiring the county to pay said providers specified sums of money *per diem*, and to pay for the medical care of the minors. It was also alleged that on October 9, 1987, and November 13, 1987, the Du Page County Probation Department submitted to the county for payment vouchers totaling $178,564.40, representing amounts owed to the plaintiffs and other foster care providers for the care and support of minors placed under the Act, but that the county refused to provide the funds to make the court-ordered payments. It was alleged that the failure of the county to pay the outstanding invoices would result in the release of approximately 60 minor children by the providers of foster care to the court and the return of said minor children to the environments from which they were removed. The plaintiffs sought the court to declare that the providers of foster care had a clear legal right to the issuance of the court-ordered payments by the county and to require the county to pay all outstanding invoices submitted by said providers.

The county filed an answer in which it admitted that the vouchers in question had not been paid but denied that plaintiffs were entitled to relief. The county then filed a motion for summary judgment. Submitted with the motion was an affidavit of Jack T. Knuepfer, the chairman of the county board. In his affidavit, Knuepfer stated that during budgetary hearings which occurred in October and November 1986, pursuant to section 7—1 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 707—1), the court requested that the county board appropriate $705,000 for the care and support of minors in fiscal year 1987. Knuepfer stated that the board passed the county's annual appropriation ordinance for that fiscal year on November 25, 1986, and that the ordinance designated a separate fund in the amount of $605,000 for youth care and support. According to the affidavit, a contingency fund in the amount of $300,000 was established in case the appropriated amount was exhausted. Knuepfer

stated that throughout 1987 the county paid $1,116,504 for the care and support of minors placed under the Juvenile Court Act. After the initial appropriation and the contingency fund were exhausted, the county transferred $65,000 from the general county fund and then approximately $145,000 in unspent sums from the Probation Department appropriation to pay for youth care and support. Knuepfer's affidavit also stated that the county had reached its maximum tax levy for the year 1988, and that payment by the county of the outstanding invoices of the foster care providers would cause reductions in the amounts allocated for other programs and services that made demands on the county budget. In the motion for summary judgment, the county argued that Illinois law did not require it to continue to pay for the care and support of minors placed under the Juvenile Court Act after the amounts requested by the court for inclusion in the annual appropriation ordinance had been exhausted.

After hearing oral argument, the circuit court denied the county's motion for summary judgment. The parties then stipulated that the matters raised in the motion constituted the county's only defense to plaintiffs' complaint for *mandamus*, and plaintiffs moved for judgment on the pleadings. The circuit court granted plaintiffs' motion and ordered the county to pay the outstanding vouchers submitted to the county for care and support of minors placed pursuant to section 5—7 of the Juvenile Court Act.

Before addressing the merits of the county's appeal, we note that the law under which plaintiffs sought relief, the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq*.), was repealed effective January 1, 1988, and replaced with the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq*.). Although the order appealed here was entered after the effective date of the new act, the underlying orders which provided for placement of minors with the plaintiffs and which required the county to pay for the care and support of such minors were entered while the former act was still in effect. Under section 7—1 of the new act, court orders made under the authority of the former act and in force on the effective date of the new act remain in force until modified or terminated by further court order. (Ill. Rev. Stat. 1987, ch. 37, par. 807—1(3).) While the outcome of this appeal would not be different under the new act, since the relevant provisions of the former act have been carried forward to the new act without substantive change, we decide the appeal under the former act. Therefore, any further references to the Juvenile Court Act pertain to the former act unless specifically noted.

The case before us revolves around several sections of the former Juvenile Court Act. Section 5—7 of the former act authorized the circuit court under specified circumstances to remove minors adjudged wards of the court from their parents, guardians, or legal custodians, and to place them with foster care providers. (Ill. Rev. Stat. 1985, ch. 37, par. 705—7.) The Act also authorized the circuit court to order the county to pay such foster care providers. Section 7—3(2) provided:

> "Whenever a ward of the court is placed under Section 5—7, the court may order the county to pay monthly such amounts as are necessary for his care and support to the guardian of the person or legal custodian appointed under this Act, or to the agency which such guardian or custodian represents." (Ill. Rev. Stat. 1985, ch. 37, par. 707—3(2).)

Finally, section 7—1 of the former act provided in pertinent part:

> "(1) Each county board shall provide in its annual appropriation ordinance or annual budget, as the case may be, for payments for the care and support of minors, and for payments for court appointed counsel in accordance with orders entered under this Act in an amount which in the judgment of the court may be needed for that purpose. Such appropriation or budget item constitutes a separate fund into which shall be paid not only the moneys appropriated by the county board, but also all reimbursements by parents and other persons and by the State.
>
> * * *
>
> (3) No order upon the county for care and support of a minor may be entered until the president or chairman of the county board has had due notice that such a proceeding is pending." Ill. Rev. Stat. 1985, ch. 37, par. 707—1.

The county does not dispute the State legislature's authority to enact legislation directing the allocation of funds controlled by the county. The county concedes that the judicial branch has the inherent power to compel government funding for its operation and administration so as to enable it to perform its judicial functions with efficiency, independence and dignity. (See *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 19.) Accordingly, the county does not challenge the judiciary's power to compel funding in the area of youth care as codified in section 7—3 of the former Juvenile Court Act, nor does it challenge the authority of the judiciary to determine the amounts to be included for youth care in the appropriation ordinance as set forth in section 7—1 of the former act. The county does challenge, how-

ever, the judiciary's power to compel funding in an amount which exceeds the amount initially appropriated.

■ The county argues that the trial court's order here renders meaningless the requirement of section 7—1 that the county board appropriate a set amount of money for youth care. The county contends that section 7—1 must be read *in pari materia* with section 7—3 to determine legislative intent (see *McCann v. Lisle-Woodridge Fire Protection District* (1983), 115 Ill. App. 3d 702), and that when read together, the statutes authorize the circuit court to order payment for the care and support of minors placed under the Act only up to the amount originally estimated as necessary for that purpose. We agree that sections 7—1 and 7—3 must be considered *in pari materia* to determine legislative intent. Even so, we do not find the limitation in the statute urged by the county. Section 7—3 provides in unambiguous language that the court may order the county to pay for the necessary care and support of minors placed under the Act. Nowhere in the Act is it stated that the court must terminate placements if the original estimate of the amounts required proves to be too low. In the absence of such a limitation in the statute, it is not this court's function to provide one now. Our function is to interpret the statutes as enacted by the legislature, not to inject new provisions, limitations or conditions not found therein. (*In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 120.) If the legislature had intended to limit the amount of county funding from which the circuit court could order payment for care and support of minors placed under the Act, it could have done so in express language. Section 7—6 of the former Act (Ill. Rev. Stat. 1985, ch. 37, par. 707—6), for instance, sets forth an explicit limitation on the amount the State may reimburse counties, yet no similar limitation pertains to payments ordered under section 7—3.

■ The county further argues that section 4 of "An Act in relation to the budgets of counties not required by law to pass an annual appropriation bill" (Ill. Rev. Stat. 1987, ch. 34, par. 2104), prohibits expenditures above the amount appropriated in a given year. That statute provides in part:

> "Except as herein provided, neither the county board nor anyone on its behalf shall have power, either directly or indirectly, to make any contract or do any act which adds to the county expenditures or liabilities in any year anything above the amount provided for in the annual budget for that fiscal year." (Ill. Rev. Stat. 1987, ch. 34, par. 2104.)

The statute goes on to provide, however:

"Nothing contained herein shall be construed to deprive the board of the power to provide for and cause to be paid from the county funds any charge upon said county imposed by law independently of any action of such board." (Ill. Rev. Stat. 1987, ch. 34, par. 2104.)

We believe the latter portion of the statute allows the county to make the payments ordered by the trial court here.

Clearly, the amounts ordered paid for the care and support of minors placed under the Juvenile Court Act are charges upon the county imposed by law independently of any action by the county board. (*St. Hedwig's Industrial School for Girls v. County of Cook* (1919), 289 Ill. 432, 442-43.) In the *St. Hedwig's* case, a situation arose not unlike that found in the case at bar. There, the Cook County board did not appropriate enough money in certain years to cover the cost of providing tuition and care to girls who had been committed to industrial school by the juvenile court, although the amount of tuition was set by statute. The *St. Hedwig's* court determined that the tuition costs were "other charges fixed by law" which the county was required to pay. (*St. Hedwig's*, 289 Ill. at 439.) As the court observed, "The only thing not definitely determined and fixed by the statute is the aggregate amount that the county shall pay each year for such services, and in the very nature of things this amount cannot be so fixed." (*St. Hedwig's*, 289 Ill. at 439.) The amounts necessary for the care and support of minors placed under the Juvenile Court Act are of a similar nature.

We do not believe a contrary conclusion is required by legislative debates relied upon by the county. (See 80th Ill. Gen. Assem., Senate Proceedings, May 17, 1977, at 209-12.) Senate Bill 357, which later became Public Act 80—813, did not concern payment for the care and support of minors placed under the Juvenile Court Act, but instead involved appointment of counsel and payments therefor. Moreover, any statements made during legislative debate do not take precedence over the plain language of the statutes.

■ Although the county concludes that to allow the circuit court to order unlimited payment for the care and support of minors placed under the Juvenile Court Act would constitute a usurpation of legislative power, we do not believe such an interpretation of the statutes results in a violation of the separation of powers doctrine. In ordering placement of minors under the Juvenile Court Act and payment for the care and support of such minors, the circuit court was following the requirements of the statute as enacted by the State legislature. As the county concedes, the legislature has the authority

to direct the allocation of funds generally controlled by a subdivision of the State. (*St. Hedwig's*, 289 Ill. at 440.) This power is manifested in other statutory provisions as well, such as the requirement that counties compensate attorneys appointed for indigent criminal defendants where the public defender has a conflict of interest. (Ill. Rev. Stat. 1987, ch. 38, par. 113—3(c).) It appears, therefore, that the trial court's order here does not violate separation of powers principles.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.