Docket No. 101385.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* RODNEY H., a Minor (The People of the State of Illinois *et al.*,
Appellants, v. Rodney H., a Minor, Appellee).

*Opinion filed December 21, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this direct appeal, the State challenges the circuit court of Cook
County's order declaring section 5–710(1)(a)(iv) of the Juvenile Court
Act of 1987 (see 705 ILCS 405/5–710(1)(a)(iv) (West 2004)) and
section 5(*l*) of the Children and Family Services Act (see 20 ILCS
505/5(*l*) (West 2004)) unconstitutional under the proportionate
penalties clause of the Illinois Constitution (see Ill. Const. 1970, art.
I, §11). For the reasons that follow, we reverse and remand.

## BACKGROUND

On September 24, 2004, 16-year-old Rodney H. entered an
admission of guilt to misdemeanor battery, which occurred during an

altercation at a park two years earlier.[1] He was adjudicated delinquent, made a ward of the court, and placed on probation for one year. A condition of his probation was high school class attendance. Rodney received a suspension for truancy. On February 28, 2005, he entered an admission of guilt to this probation violation.

On March 28, 2005, at a dispositional hearing, the trial court stated it intended to declare, *sua sponte*, Public Act 89–21 unconstitutional under the single subject clause of the Illinois Constitution. See Ill. Const. 1970, art. IV, §8(d). Public Act 89–21 added section 5–710(1)(a)(iv) to the Juvenile Court Act and section 5(*l*) to the Children and Family Services Act. Section 5–710(1)(a)(iv) provides that a court may place a ward of the court in the guardianship of DCFS, "but only if the delinquent minor is under 13 years of age." 705 ILCS 405/5–710(1)(a)(iv) (West 2004). Similarly, section 5(*l*) provides, "A minor charged with a criminal offense under the Criminal Code of 1961 or adjudicated delinquent shall not be placed in the custody of or committed to the Department by any court, except a minor less than 13 years of age committed to the Department under Section 5–710 of the Juvenile Court Act of 1987." 20 ILCS 505/5(*l*) (West 2004). On March 30, 2005, DCFS notified the Attorney General of the trial court's intent. See 134 Ill. 2d R. 19.

After learning that this court had rejected a single subject clause argument regarding Public Act 89–21 in *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341 (1999)), the trial court changed direction. The court stated it still intended to declare, *sua sponte*, section 5–710(1)(a)(iv) unconstitutional–this time, under the proportionate penalties clause–and gave the parties citations to case law to prepare for a hearing on this issue. On June 13, 2003, DCFS's attorney argued that section 5–701(1)(a)(iv) did not offend the proportionate penalties clause. Rodney's attorney had "no response to whether or not proportionality review is warranted," though he did point to the proposition that offenses with the same elements should not receive

---

[1]Rodney turned 18 years old on July 19, 2006, while this appeal was pending. Though he is no longer a minor (see 755 ILCS 5/11–1 (West 2004)), the Juvenile Court Act provides that a wardship may extend until a person is 21 years old (see 705 ILCS 405/5–755 (West 2004)). Neither party argues mootness.

different sentences. The assistant Cook County State's Attorney announced that her office had "no position on this issue."

The court then entered a written order, holding that section 5–710(1)(a)(iv) and section 5(*l*), as well as their related regulations (see 89 Ill. Adm. Code §304.4 (eff. October 1, 1998); 89 Ill. Adm. Code §304.5 (eff. January 10, 1996)) violated the proportionate penalties clause.[2] The trial court reviewed Rodney's history. At that time, Rodney lived with his grandmother, a recovering heroin addict who may have relapsed, but he was frequently away from her home. Rodney had no other relatives to care for him.

According to the trial court, a commitment to the Department of Corrections was not practical: "Given the fact that the minor only has a misdemeanor conviction and will get credit for the time spent in custody, it is unlikely that he will spend more than several weeks in an institution." The court noted that Rodney's probation officer, social workers, and educators all recommended residential placement, but such a disposition was not an option here. The trial court could not order residential placement through DCFS because section 5–710(1)(a)(iv) and section 5(*l*) do not allow DCFS to accept guardianship of delinquent minors over age 13. Further, the trial court could not order residential placement through Cook County. The court explained:

> "In Cook County a committee was originally formed pursuant to a consent decree in federal court to assist in the placement of minor delinquents. This committee should have been dissolved when that decree was vacated. [See *David B. v. McDonald*, 156 F.3d 780 (7th Cir. 1998); *David B. ex rel. Murphy v. Patla*, 950 F. Supp. 841 (N.D. Ill. 1996).] Instead this committee has devolved over time until one judge and a small army of bureaucrats has the power to over rule [*sic*] the sentencing decisions of an entire court in order to please a few

---

[2]In this order, the trial court mentioned sections 2–10 and 2–27 of the Juvenile Court Act, which also provide that a delinquent minor less than 13 years old shall not be committed to DCFS. See 705 ILCS 405/2–10(2), 2–27(1)(d) (West 2004). The court did not declare these sections unconstitutional.

county politicians. In a county of over 5,000,000 inhabitants, placements have been reduced from over 400 to less than 120 with the stated goal of reducing placements further to a maximum of 88. This minor cannot be placed in a residential setting because there is presently a freeze ordered on all placements because all funds have been exhausted. Every county in the State of Illinois struggles with the cost of placing minors who are delinquent."

The trial court asserted that the proportionate penalties clause applies to delinquency dispositions, then balked at the distinction in sections 5–710(1)(a)(iv) and 5(*l*) between delinquent minors under and over age 13:

"The wisdom of the framers of the Illinois Constitution is apparent in this case. A minor under the age of thirteen who is convicted of a simple battery can be sentenced to the guardianship of [DCFS] and be eligible for all the services offered by DCFS. [Citation.] A minor, like [Rodney] here, who is over thirteen years of age is not eligible for sentencing to the guardianship of DCFS under [section 5–710(1)(a)(iv)]. Age is not a permissible distinction in the sentencing of juveniles. The result of such a distinction is a different penalty for the same offense. Such a statutory scheme violates Art. 1, sec. 11 of the Illinois Constitution of 1970."

Stating that an unconstitutional statute is void *ab initio*, the trial court examined law before Public Act 89–21. The court determined that section 5–23(1)(a)(4) of the Juvenile Court Act (see 705 ILCS 405/5–23(1)(a)(4) (West 1994)) allowed residential placement through DCFS.[3]

---

[3]Section 5–23(1)(a)(4) stated that a delinquent minor over age 13 could be committed by the court to DCFS, but only subject to section 5 of Children and Family Services Act. 705 ILCS 405/5–23(1)(a)(4) (West 1994). Section 5, in turn, provided that DCFS has discretion to accept delinquent minors, "but no such child shall be committed to the Department by any court without the approval of the Department, except a minor less than 13 years of age." 20 ILCS 505/5(*l*) (West 1994).

The court then held a dispositional hearing at which only Rodney's probation officer testified. The probation officer discussed Rodney's situation and recommended residential placement through DCFS for two reasons: first, because Cook County is not placing minors "at this time" and, second, because "this is a dependency situation." The trial court extended Rodney's probation for three years and entered a DCFS guardianship placement order. The court agreed to stay this order pending a motion to reconsider from the State.

On August 15, 2005, the court held a hearing on the State's motion to reconsider. The State again argued that sections 5–710(1)(a)(iv) and 5(*l*) did not violate the proportionate penalties clause. Rodney, tracking the court's written order, argued that these statutes created different sentences for the same offense. The assistant Cook County State's Attorney stated that her office still had no position on this issue. In denying the State's motion, the court referred to its written order and stated that "on the face of it, the statutory scheme is disproportionate." According to the court, "a sentence is disproportionate and unconstitutional if identical offenses are given different sentences. That's exactly what the statute provides for. If he is under 13, he gets one sentence. If he is over 13, he does not get the same sentence." The court agreed to stay this order pending the State's appeal.

The State filed this direct appeal (see 134 Ill. 2d R. 603), and Rodney requested cross-relief. We allowed the Loyola University Chicago School of Law Civitas ChildLaw Center to file a brief as *amicus curiae* in support of Rodney. 155 Ill. 2d R. 345. Whether a statute is unconstitutional is a question of law, and, accordingly, our review proceeds *de novo*. *Arvia v. Madigan*, 209 Ill. 2d 520, 536 (2004).

ANALYSIS

All statutes carry a strong presumption of constitutionality. *People v. Botruff*, 212 Ill. 2d 166, 178 (2004). To overcome this presumption, a party challenging a statute must clearly establish that it violates the constitution. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003). The procedural posture of this case, however, is unique because neither party challenged the constitutionality of section

5–710(1)(a)(iv) of the Juvenile Court Act or section 5(*l*) of the Children and Family Services Act below. The trial court's ruling that these statutes facially violate the proportionate penalties clause of the Illinois Constitution was *sua sponte*. The State, as the appellant here, argues that those statutes pass constitutional muster. Rodney, as the appellee, is left to defend a trial court ruling he never sought by clearly establishing that the statutes violate the Illinois Constitution.

Rodney acknowledges that the trial court "ostensibly stated that it found the statute[s] to be facially unconstitutional under the proportionate penalties clause," but attempts to recast the court's ruling: "the court's finding and its reasoning, as set forth in its order, make plain that the finding of unconstitutionality was premised on the application of this statute to the facts of this particular case." Rodney then abandons the trial court's reasoning that the statutes created different penalties for the same offense, and instead presents an amalgam of constitutional arguments premised on the due process clauses of both the state and the federal constitutions (see Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV), as well as the proportionate penalties clause of the Illinois Constitution and the cruel and unusual punishment clause of the United States Constitution (see U.S. Const., amends. VIII, XIV). These arguments were not presented to the trial court, and were not addressed by the State in its opening brief before us. According to Rodney, an appellee may present any basis to uphold a lower court's decision (see *People v. P.H.*, 145 Ill. 2d 209, 220 (1991)), and may raise new constitutional challenges to a statute at any time (see *In re J.W.*, 204 Ill. 2d 50, 61 (2003)).

Before we address Rodney's arguments, we will first dispense with the narrow issue decided by the trial court and appealed by the State: whether sections 5–710(1)(a)(iv) and 5(*l*) facially violate the proportionate penalties clause because they create different penalties for the same offense. The proportionate penalties clause provides in part, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11. "Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). Our proportionate penalties

clause is coextensive with the cruel and unusual punishment clause. See *People v. Sharpe*, 216 Ill. 2d 481, 517 (2005), citing *People v. McDonald*, 168 Ill. 2d 420, 455 (1995). Both clauses apply only to the criminal process–that is, to direct actions by the government to inflict punishment. See *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260, 106 L. Ed. 2d 219, 228, 109 S. Ct. 2909, 2912 (1989); *Horvath v. White*, 358 Ill. App. 3d 844, 854 (2005), citing *Department of Corrections ex rel. People v. Adams*, 278 Ill. App. 3d 803, 810 (1996). We therefore must determine whether the petition for adjudication of wardship here was a direct action by the state to inflict punishment.

The purpose of the Juvenile Court Act is, in part, to secure for minors subject to the Act "such care and guidance *** as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1–2(1) (West 2004). The Act, stated the General Assembly, "shall be administered in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1–2(2) (West 2004). In 1999 when it retooled article V of the Act, the legislature stated its intent with respect to delinquent minors:

> "It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the General Assembly declares the following to be important purposes of this Article:
>
> (a) To protect citizens from juvenile crime.
>
> (b) To hold each juvenile offender directly accountable for his or her acts.
>
> (c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender. As used in this Section, 'competency' means the

development of educational, vocational, social, emotional and basic life skills which enable a minor to mature into a productive member of society.

(d) To provide due process, as required by the Constitutions of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced." 705 ILCS 405/5–101(1) (West 2004).

Once a minor is found delinquent, the trial court "shall determine whether it is in the best interests of the minor or the public that he or she be made a ward of the court, and, if he or she is to be made a ward of the court, the court shall determine the proper disposition best serving the interests of the minor and the public." 705 ILCS 405/5–705(1) (West 2004). The trial court then has a wide range of options. The court may, *inter alia*, order a delinquent minor to perform community service, order a delinquent minor to make restitution, order a delinquent minor to undergo substance abuse assessment and treatment, order a delinquent minor partially or completely emancipated, suspend a delinquent minor's driver's licence, place a delinquent minor on probation or conditional discharge, place a delinquent minor under age 13 in the guardianship of DCFS, place a delinquent minor in detention for up to 30 days, or commit a delinquent minor to the Department of Corrections, Juvenile Division (DOC). See 705 ILCS 405/5–710 (West 2004). The court may place various conditions on a delinquent minor's probation or conditional discharge, including residential placement. See 705 ILCS 405/5–715(2)(e) (West 2004). And, if the court finds that a delinquent minor's parent, guardian, or custodian is unfit, unable, or unwilling to provide care for the minor, the court may decide it is in the minor's best interests to place the minor in the custody of a suitable relative or in the guardianship of a probation officer, or to commit the minor to an agency besides DCFS or DOC, a vocational school, or any appropriate institution. See 705 ILCS 405/5–740(1) (West 2004).

Even as the legislature recognized that the juvenile court system should protect the public, it tempered that goal with the goal of developing delinquent minors into productive adults, and gave the trial court options designed to reach both goals. Article V may represent

"a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law," but proceedings under the Act still are not criminal in nature. See *In re A.G.*, 195 Ill. 2d 313, 317 (2001). "Delinquency proceedings are *** protective in nature and the purpose of the Act is to correct and rehabilitate, not to punish." *In re W.C.*, 167 Ill. 2d 307, 320 (1995); see also *In re Beasley*, 66 Ill. 2d 385, 390 (1977), citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 541, 29 L. Ed. 2d 647, 658, 91 S. Ct. 1976, 1984 (1971); *In re Armour*, 59 Ill. 2d 102, 104 (1974) ("The first purpose of [a juvenile court] statute is not to punish but to correct"). Indeed, "no suggestion or taint of criminality attaches to any finding of delinquency by a juvenile court." *In re Dow*, 75 Ill. App. 3d 1002, 1006 (1979), citing *People ex rel. Hanrahan v. Felt*, 48 Ill. 2d 171, 174-75 (1971); accord *People v. Brazee*, 333 Ill. App. 3d 43, 48 (2002). Thus, because the petition for adjudication of wardship was not a direct action by the state to inflict punishment, neither the proportionate penalties clause nor the cruel and unusual punishment clause apply here.

Further, even if those provisions applied, sections 5–710(1)(a)(iv) and 5(*l*) would not be facially unconstitutional. A facial challenge to a statute must fail if it could be validly applied in any instance. See *In re M.T.*, 221 Ill. 2d 517, 533 (2006); *In re Parentage of John M.*, 212 Ill. 2d 253, 269 (2004). The trial court assumed that sections 5–710(1)(a)(iv) and 5(*l*) created different penalties for the same offense: delinquent minors under age 13 could receive residential placement through DCFS, and delinquent minors over age 13 could not. The trial court, however, retains discretion in fashioning a disposition for a delinquent minor; there is no discrete sentence for any offense, but instead a range of options. See, *e.g.*, 705 ILCS 405/5–710 (West 2004). It is not clear that a minor under age 13 adjudicated delinquent of misdemeanor battery would receive residential placement and a minor over age 13 adjudicated delinquent of the same offense would receive a harsher disposition. More importantly, sections 5–710(1)(a)(iv) and 5(*l*) blocked only one avenue for residential placement of a delinquent minor over age 13.

This conclusion brings us squarely to Rodney's argument. Rodney contends, for the first time before this court, that a constitutional

violation results from the confluence of section 5–710(1)(a)(iv) and sections 6–7(1) and 6–8(2) of the Juvenile Court Act. According to Rodney, Public Act 89–21, which added section 5–710(1)(a)(iv), was part of an effort to balance the state budget (see *Arangold Corp.*, 187 Ill. 2d at 352), but also to answer DCFS's complaints that providing residential placement for delinquent juveniles over age 13 depleted its funds. See generally J. Hammer, *Denying Child Welfare Services to Delinquent Teens: A Call to Return to the Roots of Illinois' Juvenile Court*, 36 Loy. U. Chi. L.J. 925 (2005). Section 5–710(1)(a)(iv), in effect, shifted financial responsibility for residential placement of delinquent juveniles over age 13 from the state to the counties.

Rodney asserts that the counties also sought to limit their own expenditures in this regard after *Greve v. County of Du Page*, 177 Ill. App. 3d 991, 997 (1988), which held that "the amounts ordered paid for the care and support of minors placed under the Juvenile Court Act are charges upon the county imposed by law independently of any action by the county board." The result of the counties' lobbying efforts was sections 6–7 and 6–8. Section 6–7(1) provides:

> "Each county board shall provide in its annual appropriation ordinance or annual budget *** a reasonable sum for payments for the care and support of minors, and for payments for court appointed counsel in accordance with orders entered under this Act in an amount which in the judgment of the county board may be needed for that purpose. Such appropriation or budget item constitutes a separate fund into which shall be paid not only the moneys appropriated by the county board, but also all reimbursements by parents and other persons and by the State." 705 ILCS 405/6–7(1) (West 2004).

Section 6–8(2) provides:

> "Whenever a ward of the court is placed under Section *** 5–740, the court may order the county to make monthly payments from the fund established pursuant to section 6–7 in an amount necessary for his care and support to the guardian of the person or legal custodian appointed under this Act, or to the agency which such guardian or custodian represents." 705 ILCS 405/6–8(2) (West 2004).

According to Rodney, the county board determines the reasonable amount to appropriate for residential placements of delinquent juveniles over age 13, and the trial court cannot order the county to pay for such placements, except from a fund established for that purpose. Rodney states that the Cook County board has decreased appropriations to the fund, and at the time of his dispositional hearing, the fund was exhausted and a freeze was placed on further placements. Thus, Rodney states, these statutes, "by their plain language, now delimit the ability of the court to order the county to pay for residential placement of delinquent *** minors where the fund set aside by the county is exhausted."

Rodney does not assert that these statutes together violate separation of powers principles. His argument is much less direct. According to Rodney, when he became a ward of the court, the state created a special relationship with him as *parens patriae* and effectively took him into custody. Through wardship, the state could select his guardians, place him on probation with conditions that restrict his activities, or commit him to the DOC. Rodney claims that the state thus assumed a duty to provide him with rehabilitative care and individualized treatment, congruent with the duty it owes to abused and neglected minors (see 705 ILCS 405/2–27 (West 2004)). And because the trial court found that residential placement was the only appropriate disposition, the state had a duty to provide–and Rodney had a corresponding "liberty interest" or right to receive–residential placement. This duty, Rodney continues, could not be "statutorily abdicated," nor this right statutorily denied, by sections 5–710(1)(a)(iv), 6–7(1), and 6–8(2).

Rodney's argument implicates the due process clauses of the state and federal constitutions, as well as the proportionate penalties clause of the state constitution and the cruel and unusual punishment clause of the eighth amendment. Because juvenile dispositions are not penalties, we are left with a due process claim. Rodney relies upon *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989), and other federal circuit court cases, holding that the state owes an affirmative duty to protect persons in its custody whom it places in harm's way. See *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) ("[o]nce the state assumes custody of a person, it owes him a rudimentary duty

of safekeeping"); accord *Stevens v. Umsted*, 131 F.3d 697, 702-03 (7th Cir. 1997); *Camp v. Gregory*, 67 F.3d 1286, 1293-94 (7th Cir. 1995); *Nelson v. Heyne*, 491 F.2d 352, 359 (7th Cir. 1974). We do not disagree with the holdings in these cases, but we need not dissect them to determine whether Rodney's wardship placed him in state custody, and, if so, whether that custody created a duty to provide residential placement. Even accepting Rodney's characterization of the trial court as a "super-guardian" (see *David B.*, 156 F.3d at 783), his argument fails.

Simply put, the problem with Rodney's argument is that sections 6–7(1) and 6–8(2) are not a problem, constitutionally. We have stated that section 5–710(1)(a)(iv) blocked one avenue to ordering residential placement for delinquent minors over age 13. As a practical matter, Cook County's lack of funds, not sections 6–7(1) and 6–8(2), blocked another avenue.[4] That is, contrary to Rodney's argument, sections 6–7(1) and 6–8(2) do not "insulate the County from the responsibility of providing residential placement to delinquent minors" and do not prevent the trial court from ordering residential placement by counties. These sections, in fact, do not even address juvenile dispositions. Instead, they direct counties to create reasonably sized funds to pay for the care of delinquent minors and allow courts to order disbursements from such funds. See *In re Moses W.*, 363 Ill. App. 3d 182, 189 (2006). The fact that Cook County's fund was exhausted when the trial court sought a residential placement for Rodney does not render those statutes invalid. When Cook County has funds to provide residential placements, the purported constitutional problem identified by Rodney disappears. As the State correctly notes, a failure to appropriate reasonable funds to care for delinquent minors may violate section 6–7(1), but that does not mean that section 6–7(1), section 6–8(2), and section 5–710(1)(a)(iv), separately or together, are unconstitutional. Rodney's argument is better levied against the county, who is not a party to this appeal and further declined to offer an opinion on any constitutional issue below,

---

[4]Rodney has not asked us to hold that a trial court could order a county to make payments for residential placement outside the fund required by section 6–7(1). We express no opinion on this question.

than against the statutes. We express no opinion on the merits of such a claim here.

Rodney finally raises two equal protection arguments. Rodney contends that sections 5–710(1)(a)(iv), 6–7(1), and 6–8(2) together violate equal protection because delinquent minors over age 13 whose cases reach the trial court before and after county funds are exhausted are arbitrarily treated differently. Rodney also contends that these statutes together violate equal protection because delinquent minors with affluent families can pay their way into residential placement (see 705 ILCS 405/6–9 (West 2004)), while indigent minors cannot. These arguments collapse if the county has funds to provide residential placements.

In his request for cross-relief, Rodney asks us to order the trial court to terminate his wardship if we decide that the state had a duty to provide him with residential placement and that placement through DCFS is not possible. This would sever the special relationship formed between the state and Rodney, and extinguish the state's duty toward him.

Because we need not decide whether the state had a duty to provide residential placement, we reject Rodney's request. Further, we decline to micromanage juvenile court orders. The trial court on remand remains as free as it was before this appeal to fashion any disposition consistent with statutory directives. The court could, of course, terminate the wardship of Rodney, who is no longer a minor.

## CONCLUSION

For the reasons that we have stated, we reverse and remand.

*Reversed and remanded.*